592 F.2d 704
 John DOE, by his next friend and father, Richard Doe,
Individually and on behalf of all others similarly situated
v.
Aldo COLAUTTI, Individually and in his official capacity as
Secretary of Public Welfare, Pennsylvania Department of
Public Welfare and Glenn Johnson, Individually and in his
official capacity as Director of Medical Assistance,
Pennsylvania Department of Public Welfare.
Appeal of John DOE, by his next friend and father Richard Doe.
 No. 78-1828.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 15, 1978.
Decided Feb. 8, 1979.
As Amended Feb. 23, 1979.
 
 R. Michael Owens, Elliot B. Platt, Edmond A. Tiryak, Community Legal Services, Inc., Philadelphia, Pa., for appellant.
 Margret Anderson, Asst. Atty. Gen., Dept. of Justice, Betty F. Perry, Asst. Atty. Gen., Dept. of Public Welfare, Philadelphia, Pa., for appellee.
 Before GIBBONS, VAN DUSEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This case presents a challenge to limits set by Pennsylvania's medical assistance statute, Pa.Stat.Ann. tit. 62 § 443.1 (Purdon Supp. 1978), for state benefits for hospitalization in private mental institutions.[1] Using the pseudonym "John Doe," the plaintiff sought declaratory relief and an injunction in the United States District Court for the Eastern District of Pennsylvania against the Pennsylvania Secretary of Public Welfare and others (collectively, the "State"). The injunction would have required the continuation of Doe's benefits for hospitalization in a private psychiatric institution even though the durational limit of the statute had been reached. When the district court denied a motion for a preliminary injunction, Doe appealed. 28 U.S.C. § 1292(a)(1) (1976). We affirm.
 
 I.
 
 2
 After an attempted suicide, Doe was admitted in April, 1978, to the Institute of Pennsylvania Hospital, a private psychiatric institution. Because of his financial circumstances, Doe qualified for benefits under Pennsylvania's medical assistance program. Pa.Stat.Ann. tit. 62 §§ 441.1, 441.2, 442.1 (Purdon Supp. 1978). Under this statute Pennsylvania has set durational limits on the benefits payable for hospitalization in a private mental institution. If a patient hospitalized in such an institution is older than 20 years of age and younger than 65, the law limits his benefits to payments for sixty days of hospital care in any "benefit period." Pa.Stat.Ann. tit. 62 § 443.1(4) (Purdon Supp. 1978).[2] The term "benefit period" is so defined that, after sixty days of hospitalization in a private psychiatric hospital, a patient can receive no further benefits as an inpatient in such an institution until he has passed sixty days in "which he is not an inpatient in a hospital." Pa.Stat.Ann. tit. 62 § 402 (Purdon Supp. 1978). After sixty days of hospitalization at the Institute of Pennsylvania Hospital, Doe was no longer eligible for benefits under the medical assistance program. But he was eligible for care in a State mental hospital. See Pa.Stat.Ann. tit. 50 §§ 7101-7503 (Purdon Supp. 1978). To avert his transfer from a private to a public mental hospital, Doe, as an individual and as representative of a class, brought this action to invalidate the part of Pa.Stat.Ann. tit. 62 § 443.1 that creates durational limits on benefits for hospitalization in a private psychiatric institution.
 
 
 3
 Doe contends that the Pennsylvania statute invidiously discriminates against him and against the class of which he is a member the mentally ill affected by the durational limit. Under Pennsylvania law, a person between 21 and 64 years of age is entitled to benefits for unlimited hospitalization for physical illness in a private general hospital. Pa.Stat.Ann. tit. 62 § 443.1(1) (Purdon Supp. 1978).[3] If a person between 21 and 64 years of age has been hospitalized in a private mental hospital, rather than a general hospital, he is limited to sixty days' benefits in any benefit period. Pa.Stat.Ann. tit. 62 § 443.1(4) (Purdon Supp. 1978). This distinction between hospitalization in a private general hospital and a private mental hospital, Doe argues, discriminates against the mentally ill and conflicts with the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976), and with the Equal Protection Clause of the fourteenth amendment.[4]
 
 
 4
 This appeal is from the denial of Doe's motion for a preliminary injunction. In deciding the motion, the district court focussed on whether Doe has shown: (1) that he would suffer irreparable harm in the absence of relief Pendente lite, and (2) that he was likely to succeed on the merits. See Delaware Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919-20 (3d Cir. 1974), Quoting A.L.K. Corp. v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3d Cir. 1971).[5] To prove irreparable harm, Doe introduced testimony that care in private mental hospitals is better than that in public institutions. Doe also presented testimony that he suffered from a schizophrenic disorder, that the chances for his recovery would decline with the passage of time, and that his transfer from one hospital to another would disrupt his relationship with his psychiatrist and would damage his chances for recovery. On the basis of this evidence, the district court concluded that Doe had sufficiently shown irreparable harm. But the district court held that Doe had not demonstrated "a reasonable probability of eventual success in the litigation." A.L.K. Corp. v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3d Cir. 1971). We hold that the district court did not abuse its discretion in concluding that even if Doe has shown irreparable harm, his chances of success on the merits are too slight for the issuance of a preliminary injunction.[6] Because of this holding, we need not reach the issue of irreparable harm.II.
 
 
 5
 At oral argument, the State informed the court that Doe was transferred from the Institute of Pennsylvania Hospital to a public psychiatric hospital and that, after treatment, he has now been discharged from hospitalization. These circumstances suggest that Doe's claim might be moot.
 
 
 6
 Doe hopes to prosecute this suit as a class action, but as far as the record before us reveals, the district court has not yet certified the proposed class. Nonetheless, Doe's suit can proceed if Doe himself has a live claim.
 
 
 7
 We hold that Doe, as an individual, does have a live claim, at least for declaratory relief. See Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 121-22, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). The action that Doe challenges the State's denial of his request for more than sixty days of benefits for private psychiatric hospitalization ended when Doe ceased to be hospitalized. As Doe's counsel informed us at oral argument, Doe now seeks not the immediate payment of benefits, but declaratory and injunctive relief concerning future repetition of the events underlying this lawsuit. In Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), the Supreme Court set out the standards by which we are to rule upon the mootness of such a claim:
 
 
 8
 Sosna (V. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975),) decided that in the absence of a class action, the "capable of repetition, yet evading review" doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.
 
 
 9
 423 U.S. at 149, 96 S.Ct. at 349.
 
 
 10
 Here, the challenged action, which ended with Doe's discharge from hospitalization, was "in its duration too short to be fully litigated prior to its cessation or expiration." And Doe's psychiatric history creates "a reasonable expectation that the same complaining party (will) be subjected to the same action again." In Weinstein the Court found no such expectation, for the complaining party, who was challenging parole procedures, had been released from supervision and could not point to a "demonstrated probability" of his future return to the parole system. 423 U.S. at 149, 96 S.Ct. 347. Doe's psychiatric history, on the other hand, does argue for a "demonstrated probability" of his return to mental hospitals. At various times in the past several years, Doe has been in treatment at the Philadelphia Psychiatric Center. He has also been a patient at Lankenau Hospital. Doe has been diagnosed as suffering from a form of schizophrenia, and on at least two occasions he has attempted suicide. It is true that future hospitalization might last long enough to permit full review of Doe's statutory and constitutional claims, but his erratic past, from hospitalization to discharge to hospitalization again, supports the prediction that his claims in the future may well continue to escape review. This case, we conclude, is not moot.[7]
 
 III.
 
 11
 Doe contends that Pa.Stat.Ann. tit. 62 § 443.1 conflicts with § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976), and is therefore unlawful. U.S.Const. art. VI cl. 2. Section 504 reads:
 
 
 12
 No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 
 
 13
 The parties have stipulated that Pennsylvania receives federal financial assistance for mental health programs and for other programs. The state, moreover, has not contested that Doe, a schizophrenic, is "handicapped" under the terms of the Rehabilitation Act. See 45 C.F.R. § 84.3(j)(1)(i), (ii), (iii) (1977).[8]
 
 
 14
 According to Doe, Pennsylvania denies to the mentally ill benefits that it extends to the physically ill. The physically ill are entitled to payments for private general hospital care, however long they remain in the hospital; but the mentally ill, if between 21 and 64 and if in a private mental hospital, are entitled to benefits for only sixty days at a time. In this differentiation, Doe argues, the State has discriminated against the mentally ill by reason of their handicap and has violated section 504 of the Rehabilitation Act.
 
 
 15
 Doe's position is that the provisions of 45 C.F.R. § 84 (1977), a regulation promulgated under section 504 of the Rehabilitation Act, make clear how the distinction between general hospitalization and psychiatric hospitalization violates federal law.[9] In each instance the provisions prohibit a recipient of federal money from giving the handicapped an "aid, benefit, or service" that is not as good as the aid, benefit, or service provided to the unhandicapped. But the regulation does not explain how to identify the relevant "aid, benefit, or service," which under the statute a recipient of federal funds must provide equally to the handicapped, as to those not handicapped. Doe contends that the State has discriminated against the mentally ill in the provision of "private inpatient care." To the physically ill the State has extended benefits unlimited in time; to the mentally ill, it has afforded only sixty days of benefits. The State, on the other hand, sees care for physical illness as one benefit and care for mental illness as another. In the treatment of their physical illnesses, the mentally ill receive the same benefits as everyone else. A mental patient with heart disease, for instance, is as entitled to benefits for treatment of the heart disease as would be a person not mentally ill.
 
 
 16
 In resolving this question, we find helpful both an "Analysis of Final Regulation" under the Rehabilitation Act, which appears as an appendix to 45 C.F.R. § 84 (1977), and the structure of the federal Medicaid program, 42 U.S.C. §§ 1396 Et seq. (1976). The "Analysis" was prepared by the Department of Health, Education, and Welfare, which administers the Federal Rehabilitation Act.
 
 
 17
 In discussing the various parts of 45 C.F.R. § 84, this "Analysis" denies that the Rehabilitation Act requires a hospital or other recipient of federal assistance to offer specialized treatment for particular handicaps. The law, as elaborated by the regulation, is construed instead to require that such treatment as a hospital or other recipient gives must be extended to the handicapped on a basis of equality with those not handicapped. The "Analysis" explains, for instance:
 
 
 18
 Recipients are not required . . . to provide specialized services and aids to handicapped persons in health programs. If, for example, a college infirmary treats only simple disorders such as cuts, bruises, and colds, its obligation to handicapped persons is to treat such disorders for them.
 
 
 19
 45 C.F.R. § 84, Appendix A, paragraph 33. Similarly, the "Analysis" construes one part of 45 C.F.R. § 84 to mean that
 
 
 20
 . . . a burn treatment center need not provide other types of medical treatment to handicapped persons unless it provides such medical services to nonhandicapped persons. It could not, however, refuse to treat the burns of a deaf person because of his or her deafness.
 
 
 21
 Id., paragraph 36. And the "Analysis," in interpreting a provision on drug and alcohol addicts, declares that this provision in the regulation.
 
 
 22
 . . . does not mean that all hospitals and outpatient facilities must treat drug addiction and alcoholism. It simply means, for example, that a cancer clinic may not refuse to treat cancer patients simply because they are also alcoholics.
 
 
 23
 Id., paragraph 37.
 
 
 24
 These examples convincingly contradict Doe's interpretation of the regulation under the Rehabilitation Act. If the "aid, benefit, or service" referred to in 45 C.F.R. § 84.4(b) could include the category "private inpatient care," a private cancer center providing hospitalization could not refuse to offer any hospitalization necessary to treat mental illness. Its refusal to treat mental disease would deny "private inpatient care" to the mentally ill solely by reason of their handicap.
 
 
 25
 Doe attempts to avoid this contradiction by interpreting the examples in the "Analysis" to mean only that a recipient need not provide any new kinds of services or benefits. Here, he argues, the State already supplies some private inpatient care for mental illness, and he does not ask for any new benefit, but only for expansion of an existing benefit. We disagree with Doe's argument. If the "aid, benefit, or service" to which 45 C.F.R. § 84.4(b) refers could include a category such as "inpatient hospital care," the cancer center or burn center hypothesized in the "Analysis" would also be offering an existing program under which the specialized treatment of handicaps would be an expansion an existing program of "inpatient hospital care." A mentally ill person could seek psychiatric care in a burn center under that center's existing "service" of "inpatient hospital care." Under Doe's broad definition of "aid, benefit, or service," the examples in the "Analysis" all concern existing, rather than new, benefits. Doe's proposed distinction between new and existing services does not hold up.
 
 
 26
 The structure of the federal Medicaid program also counsels against Doe's interpretation of section 504 in the Rehabilitation Act. States participating in the program are required to provide various medical services, See 42 U.S.C. § 1396a(a)(13)(B), (C) (1976), but they need not provide inpatient care at a psychiatric hospital. Indeed, if the patients are between 21 and 64 years of age, the federal government will pay to the states no reimbursements whatsoever for the costs of such care. See 42 U.S.C. § 1396d(a)(14), (16) (1976).
 
 
 27
 The gaps in the requirements of the Medicaid statute were not inadvertent. Congress conferred "broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." Beal v. Doe, 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977) (footnote omitted). In dealing with 21- to 64-year-old inpatients in mental hospitals, Congress not only left participating states free to include or exclude benefits for such patients, but Congress even determined not to reimburse the costs when states did decide to cover these patients. Because Congress so carefully drew these lines in the Medicaid statute, we do not believe, in the absence of any specific evidence supporting Doe's position, that Congress intended section 504 of the Rehabilitation Act to obliterate the distinctions between the medical care a state medical assistance program must cover and the care it need not include.
 
 IV.
 
 28
 In his argument based on the Equal Protection Clause, Doe urges that classifications according to mental illness are "suspect" and demand strict judicial scrutiny. If Pennsylvania's law is measured by this strict standard of review, Doe contends, it must be held unconstitutional. In Doe's view, the law discriminates against the mentally ill by limiting the duration of benefits for private psychiatric hospitalization but granting benefits without time limits for care of physical illnesses in private general hospitals. Doe does not argue, however, that this distinction in benefits is unconstitutional if the appropriate standard for review is less than "strict scrutiny."
 
 
 29
 Because of the Supreme Court's summary affirmance in Legion v. Weinberger, 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973), Aff'g Legion v. Richardson, 354 F.Supp. 456 (S.D.N.Y.) (three-judge court), Doe's argument under the Equal Protection Clause is not likely to succeed. In Legion the plaintiffs brought a class action in which they challenged the constitutionality of the Medicare and Medicaid laws. As the laws then stood, eligible patients who were older than 65 could receive benefits without limitation of time if they were in a general hospital. If they were in a psychiatric hospital, patients over 65 were entitled to benefits only for a lifetime total of 190 days of care. Contending that most patients over 65 in public mental institutions needed long-term care, the plaintiffs alleged unconstitutional discrimination against the mentally ill who were hospitalized in public mental hospitals. There was a similar argument concerning patients who were 65 or younger. As for these patients, benefits were payable for hospitalization in general hospitals, including psychiatric institutions associated with general hospitals. But patients in state mental hospitals, which would not be associated with general hospitals, were ineligible for benefits. Once again, the plaintiffs asserted that the statutes unconstitutionally discriminated against patients in state mental hospitals.
 
 
 30
 In examining the challenged laws, a three-judge court applied a test of "rationality":
 
 
 31
 Where a statutory classification is not conceived on peculiarly suspect grounds such as wealth or race, all that is constitutionally required is that the challenged classification or restriction bear a reasonable relationship with the objectives sought to be fulfilled by the legislation.
 
 
 32
 354 F.Supp. at 459 (citation omitted). The court concluded that the laws were rational and satisfied the requirements of equal protection. Id. The Supreme Court summarily affirmed, and this summary affirmance, being a decision on the merits, creates a precedent that is binding upon us. Hicks v. Miranda, 422 U.S. 332, 343-45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).
 
 
 33
 The Legion case refutes Doe's argument under the Equal Protection Clause. In Legion the Supreme Court sustained a Medicare law under which, for patients over 65, there was a durational limit on benefits for care in a psychiatric hospital, but no limit for care in a general hospital. Pennsylvania's law, for the age group pertinent in this case (21 to 64), makes a similar allocation of benefits. No durational limit applies to hospitalization in a general hospital, but patients in a private psychiatric hospital are subject to a sixty-day limit on benefits. Because Congress could constitutionally set durational limits on benefits for patients over 65 in All psychiatric hospitals, it is likely that Pennsylvania may limit benefits for patients from 21 to 64 in Private psychiatric hospitals.[10] Similarly, the Medicaid law in Legion, which granted benefits for those 65 or younger, extended coverage to patients in general hospitals, including private mental hospitals associated with general hospitals, but denied benefits to patients in all other mental institutions. This law excluded patients in public and unaffiliated private mental hospitals from benefits but extended benefits to patients in general hospitals. It was as "discriminatory" as the Pennsylvania law challenged here.
 
 
 34
 Because the Supreme Court in Legion affirmed without opinion, it did not necessarily adopt the reasoning of the three-judge district court, which based its decision on the "rationality" of the challenged law. But the Supreme Court probably implied a rejection of the "strict scrutiny" for which Doe contends, inasmuch as that stringent standard virtually ensures a finding of unconstitutionality. Cf. Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court, 86 Harv.L.Rev. 1, 8 (1972) (strict scrutiny of Warren Court "fatal in fact"). Whatever the correct standard for judicial review, the result in Legion the upholding of the particular classifications in the Medicaid and Medicare laws makes it unlikely that Doe can successfully challenge Pennsylvania's law. As we have observed, Supra, the laws upheld in Legion were no less "discriminatory" than is Pa.Stat.Ann. tit. 62, § 443.1.
 
 
 35
 Doe's chances for success are made even more remote by the strong arguments against the view that classifications based on mental disease are suspect. The Supreme Court has written that a class is not entitled to special solicitude under the Equal Protection Clause unless the members of the class have "been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities." Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) (per curiam). Although the mentally ill have been the victims of stereotypes, the disabilities imposed on them have often reflected that many of the mentally ill do have reduced ability for personal relations, for economic activity, and for political choice. This is not to say that the legal disabilities have precisely fit the actual incapacities of the mentally ill individuals whom the law has burdened, but it is important that the legal disabilities have been related, even if imperfectly, to real inabilities from which many of the mentally ill suffer.
 
 
 36
 The Supreme Court, moreover, has been reluctant to grant extraordinary judicial protections to a class that is "large, diverse, (and) amorphous." San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The concept of "mental illness" is susceptible to much dispute, and the category encompasses a whole range of disorders, varying in character and effects.
 
 
 37
 Even without judicial recognition of a "suspect classification," many states, and especially Pennsylvania, have in recent years devoted more and more of their resources to treatment of the mentally ill.[11] Pennsylvania's enactment of the comprehensive Mental Health and Mental Retardation Act of 1966, Pa.Stat.Ann. tit. 50 §§ 4101 Et seq. (Purdon 1969 and Purdon Supp. 1978), and its allocation of an extraordinarily large portion of its budget to the treatment of the mentally ill are warnings against judicial creation of a new "suspect classification."[12]
 
 V.
 
 38
 Because Doe is not likely to succeed on the merits of his statutory and constitutional arguments, the district court was within its discretion in denying the motion for a preliminary injunction. The order of the district court will be affirmed. Each party is to bear his or its own costs.
 
 
 
 [1]
 The statute provides, in part:
 The following medical assistance payments shall be made in behalf of eligible persons whose institutional care is prescribed by physicians:
 (4) The cost of care in any mental hospital or in a public tuberculosis hospital. . . . Care in a private mental hospital shall be limited to sixty days in a benefit period. . . .
 
 
 [2]
 On its face, the statute establishes this time limit without regard to the patient's age, but Pennsylvania, by regulation of the Department of Public Welfare, has extended unlimited benefits to patients under 21 years of age or over 64 years of age. See Department of Public Welfare Medical Assistance Manual §§ 9100(12), 9426
 
 
 [3]
 The patient must also meet other requirements for eligibility, but those requirements are not relevant to this case. See Pa.Stat.Ann. §§ 441.1, 441.2, 442.1 (Purdon Supp. 1978)
 It is not clear what are the circumstances under which a mentally ill patient could secure treatment at a general hospital. At the hearing before the district court, one witness testified that, "in general," the mentally ill patient would need to have a medical as well as a psychiatric problem. By its terms, the time limit in § 443.1 does not cover psychiatric care in a general hospital.
 
 
 [4]
 Doe brought the suit under 42 U.S.C. § 1983 (1976) and asserted jurisdiction under 28 U.S.C. § 1343(3), (4) (1976). He invoked 28 U.S.C. § 1331 (1976) as an additional basis for jurisdiction
 
 
 [5]
 A district court should also consider, when they are relevant, the possibility of harm to third parties from the injunction and the effect of the injunction on the public interest. Delaware Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 920 (3d Cir. 1974)
 
 
 [6]
 We may reverse a district court's decision on issuance of a preliminary injunction only if that court has abused its discretion. Oburn v. Shapp, 521 F.2d 142, 147 (3d Cir. 1975)
 
 
 [7]
 Doe's history lends to this case the "concrete adverseness which sharpens the presentation of issues . . . ." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)
 
 
 [8]
 Doe has affirmative rights under section 504 of the Rehabilitation Act and may enforce those rights through a private cause of action. Leary v. Crapsey, 566 F.2d 863, 865 (2d Cir. 1977) (per curiam); Lloyd v. Regional Transportation Authority, 548 F.2d 1277 (7th Cir. 1977); United Handicapped Federation v. Andre, 558 F.2d 413, 415 (8th Cir. 1977). The fourth circuit is also in accord. Davis v. Southeastern Community College, 574 F.2d 1158, 1159 (4th Cir. 1978). The Supreme Court has granted certiorari in that case. --- U.S. ----, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979)
 
 
 [9]
 Doe relies especially on the following sections of 45 C.F.R. § 84.4 (1977):
 (b) Discriminatory actions prohibited. (1) A recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:
 (i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service;
 (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
 (iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others;
 (iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others;
 (vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.
 
 
 [10]
 As noted Supra, Pennsylvania would provide Doe with care in a public psychiatric hospital without durational limits. Pa.Stat.Ann. tit. 50 §§ 7101-7503 (Purdon Supp. 1978)
 
 
 [11]
 In 1966-67, Pennsylvania devoted $142,000,000 to institutional care of the mentally ill and mentally retarded. Of this amount, $125,000,000 had originally come from the State itself, and the rest was from federal and other sources. The State also supported community services for the mentally ill and retarded, paying out a total of $12,900,000, of which $12,500,000 had been supplied from the State's own tax revenues. (1968-1969) Budget of the Commonwealth of Pennsylvania 159-63, 167. By 1976-77, the amounts had multiplied. For institutional care, the State expended $495,000,000, of which $338,000,000 came from the State's own resources. The community services program had reached $91,900,000, and of this amount $91,200,000 represented the State's own contribution. (1978-79) Commonwealth of Pennsylvania Executive Budget 586, 596-97
 
 
 [12]
 Pennsylvania's Mental Health and Mental Retardation Act mandates the Pennsylvania Department of Public Welfare "(t)o assure within the State the availability and equitable provision of adequate mental health and mental retardation services for all persons who need them, regardless of religion, race, color, national origin, settlement, residence, or economic or social status." Pa.Stat.Ann. tit. 50 § 4201 (Purdon 1969). In addition, each county is required to "establish a county mental health and mental retardation program for the prevention of mental disability, and for the diagnosis, care, treatment, rehabilitation and detention of the mentally disabled . . . ." Id., at § 4301. The costs of this county program are in large measure also borne by the State