# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| | ) | C.A. No.: CPU4-24-000483 |
| N.J.P. | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner N.J.P.'s Motion to Seal the Record, [1] in which Petitioner seeks to have their Petition for Change of Name filed under seal. [2] The Court held a hearing on the matter on February 3, 2025. At the conclusion of the hearing, the Court reserved decision and allowed Petitioner the opportunity to present to the Court an overriding interest, i.e., a current real threat, to the presumption that the Court's records are to remain open to the public. Petitioner advances three arguments: (1) Petitioner's subjective apprehension; (2) Petitioner's privacy interest; and (3) dignitary harms to Petitioner.

Commencing as early as 1915, a multitude of jurisprudential bodies across the nation—including the Supreme Court of the United States—have affirmed the inherent prerogative of the public to scrutinize and duplicate judicial records and

---

[1] N.J.P. is a pseudonym used in this Petition and related filings to protect the identity of the Petitioner for the reasons stated herein.

[2] The Court granted Petitioner's Petition for Change of Name on March 7, 2024. On January 9, 2025, Petitioner filed the current Motion.

1

documents.[3] This principle is essential for promoting transparency and accountability within the judicial system, thereby enabling the citizenry to exercise diligent oversight of the judiciary's operations and, concomitantly, preserve public confidence in the decisions it renders.[4] As James Madison warned, "[a] popular Government without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy: or perhaps both. … A people who mean to be their own Governors, must arm themselves with the power which knowledge gives."[5]

This fundamental tenet of open access, enshrined in federal jurisprudence, finds direct application within the legal framework of Delaware. Delaware's Constitution mandates that all courts be open to the public.[6] In turn, Delaware courts have consistently recognized a common law right of access to judicial records.[7] It is a well-settled principle within Delaware's courts that the openness of its tribunals is essential to the public's faith in the judiciary's impartiality and the preservation of

---

[3] *Ex parte Uppercu*, 239 U.S. 435, 440-441 (1915); *see, e.g., Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597 (1978); *McCoy v. Providence J. Co.*, 190 F.2d 760, 765-766 (1st Cir. 1951); *Fayette Cnty. V. Martin*, 130 S.W.2d 838, 843 (Ky. Ct. App. 1939); *Nowack v. Auditor Gen.*, 219 N.W. 749, 750 (Mich. 1928); *In re Egan*, 98 N.E. 467, 469 (N.Y. 1912); *State ex rel. Nev. Tile Guar. & Trust Co. v. Grimes*, 84 P. 1061, 1072-1074 (Nev. 1906); *Brewer v. Watson*, 71 Ala. 299, 303-306 (Ala. 1882); *People ex rel. Gibson v. Peller*, 181 N.E.2d 376, 378 (Ill. App. Ct. 1962).
[4] *Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555, 592 (1980) (Brennan. J., concurring).
[5] Letters from James Madison to W. T. Barry, Aug. 4, 1822, in 9 The Writings of James Maidison 103 (Hunt ed. 1910).
[6] Del. Const. Art. 1, §9. *See Sokolve v. Marenberg*, 2013 WL 6920602, at *1 (Del. Super. Ct. Dec. 20, 2013).
[7] *See Optical Air Data Sys., LLC v. L-3 Commc'ns Corp.*, 2020 WL 710264 (Del. Super. Ct. Feb. 7, 2020); *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2022 WL 1925999 (Del. Super. Ct. June 6, 2022); *Doe No. 2 v. Milford Sch. Dist.*, 2011 WL 7063187 (Del. Super. Ct. Dec. 20, 2011).

democratic governance.[8] The right to access, however, is not unlimited; each of Delaware's courts provides avenues to seal records from public disclosure.[9] The Court of Common Pleas Civil Rule 5(g) provides that the Court may, upon a showing of good cause, order that certain records or portions thereof be placed under seal.[10]

"Good cause" has been understood to exist where the information is so sensitive that it outweighs the public's strong interest to access the court records; information that is merely embarrassing will not satisfy this stringent standard.[11] The party seeking the seal must show a particularized harm with specificity.[12] "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," will not suffice.[13] Common examples of information that may qualify for confidential treatment include: "trade secrets; sensitive proprietary information; sensitive financial, business or personal information; sensitive personal information such as medical records; and personally identifying information such as social security numbers, financial account numbers, and the names of minor children."[14]

---

[8] *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, 2020 WL 6799122, at *2 (Del. Ch. Nov. 19, 2020).
[9] *Id.*
[10] CCP Civ. R. 5(g)(2).
[11] *Manhattan Telecomms. Corp.*, 2020 WL 6799122, at *2.
[12] *Id.*
[13] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).
[14] *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *3 (Del. Ch. Oct. 14, 2013).

Analogous to records placed under seal are cases permitting anonymous filing, as both pertain to obscuring otherwise public information. Most cases permitting anonymous filing pertain to issues involving abortion,[15] birth control,[16] welfare prosecutions involving abandoned or illegitimate children[17], mental illness,[18] religion,[19] homosexuality,[20] and transsexuality.[21] "The most compelling situations involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity."[22] "The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'"[23]

Petitioner's most compelling argument is about privacy; namely, Petitioner's privacy interest is in their identity as a transgender individual. Until recently, there was little precedent to serve as a guiding beacon in navigating whether a person's

---

[15] *Doe No. 2 v. Milford Sch. Dist.*, 2011 WL 7063187, at *1 (Del. Super. Ct. Dec. 20, 2011) (citing *Roe v. Wade*, 410 U.S. 113 (1973)).
[16] *Id.* (citing *Doe v. Deschamps*, 64 F.R.D. 652 (D. Mont. 1974)).
[17] *Id.* (citing *Doe v. Gillman*, 347 F. Supp. 783 (N.D. Iowa 1972)).
[18] *Id.* (citing *Doe v. Colautti*, 592 F.2d 704 (3d Circ. 1979)).
[19] *Doe No. 2*, 2011 WL 7063187, at *1 (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).
[20] *Id.* (citing *Doe v. Commonwealth's Att'y.*, 403 F. Supp. 199 (E.D. Va. 1975)).
[21] *Id.* (citing *Doe v. McConn*, 489 F. Supp. 76 (S.D. Tex. 1980)).
[22] *Doe v. Diocese Corp.*, 43 Conn. Supp. 152, 159 (Conn. Super. Ct. 1994).
[23] *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992); *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 414 (10th Cir. 1982); *S. Methodist Univ. Ass'n v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979); *Free Mkt. Comp. v. Commodity Exch.*, 98 F.R.D. 311 (S.D.N.Y. 1983); *Doe v. Deschamps*, 64 F.R.D. 652 (D. Mont. 1974).

privacy interest as a transgendered individual outweighs the public's interest in open records. However, in recent years, some jurisdictions have either enacted legislation or established case law permitting transgender individuals to seal their change of name.[24]

In 2022, New Jersey addressed an issue analogous to the one presented here. In *Matter of T.I.C.*, the trial court denied the transgender petitioner's request to seal the record of their name change.[25] The court noted that it had handled numerous gender-affirming name change applications where no request was made to seal the record, and it highlighted the fact that the petitioner had not personally experienced harassment due to his transgender identity.[26] On appeal, however, the court reversed, and held that the rule governing record seals "does not require that the 'clearly defined and serious injury' be physical harm or the threat of physical harm,"[27] nor does it require the individual to have already suffered some degree of harm or threats.[28] The court emphasized the widespread violence, harassment, and discrimination faced by transgender individuals.[29]

---

[24] *See In re M.T.*, 326 Cal. Rptr. 3d 8080 (Cal. Ct. App. 2024); *In re Matter of M.E.B.*, 126 N.E.3d 932 (Ind. Ct. App. 2019); NY CIV RTS § 64-a(1) (2021); Or. Rev. Stat. Ann. § 33.420(4) (2024); Wash. Rev. Code Ann. § 4.24.130 (2023).
[25] 470 N.J. Super. 596 at 605 (N.J. Super. Ct. App. Div. 2022).
[26] *Id.* at 611-614.
[27]*Id.*
[28] *Id.*
[29] *Id.*

This Court is inclined to follow the approach taken by Delaware's neighboring jurisdiction in *Matter of T.I.C.* "Indeed, it is difficult to imagine a more intimate, personal, and private matter than whether a person's gender identity conforms with the sex they were assigned at birth, typically based upon the existence and appearance of their reproductive organs, and their chromosomal makeup."[30] "When one has a sexual history falling outside the realm of the 'conventional,' that privacy interest is enhanced greatly, whether one has created that history voluntarily or it is forced upon a person as a result of abuse."[31] Under this standard, Petitioner would suffer prejudice if their records were to remain open, and the interests of justice do not require the public to have access to Petitioner's Name Change Petition.

This Court is also aware of the alarming statistics regarding the risk of harassment, violence, and homicide to the transgender population, both nationwide[32] and in Delaware.[33] Since the Petitioner is of a class of people targeted because of

---

[30] *In re the Matter of T.I.C.-C.*, 470 N.J. Super. 596, 609 (N.J. Super. Ct. App. Div. 2022).

[31] *Doe*, 43 Conn. Supp. at 161.

[32] *In re Matter of M.E.B.*, 126 N.E.3d 932, 936 (Ind. Ct. App. 2019); *see also The Epidemic of Violence Against the Transgender & Gender-Expansive Community in the U.S.*, HUMAN RIGHTS CAMPAIGN FOUNDATION (Nov. 2024), https://reports.hrc.org/an-epidemic-of-violence-2024#epidemic-numbers.

[33] *See* Ryan Cormier, *'We Feel Like We're Going Underground': Delaware Pride Event Canceled Amid Online Attacks*, DELAWARE NEWS J. (March 10, 2025), https://www.delawareonline.com/story/news/local/2025/03/10/delaware-lgbtq-community-pride-events-canceled-online-attacks/80688561007/; *Anti-gay Hate Crime Reported in Rehoboth Beach*, WASHINGTON BLADE (Aug. 18, 2024), https://www.washingtonblade.com/2024/08/18/anti-gay-hate-crime-reported-in-rehoboth-beach/; SUSSEX PRIDE, *Hate Crimes Against the LGBTQ+ Community in Delaware*, Sussex Pride (Aug. 21, 2023), https://sussexpride.org/posts/hate-crimes-against-the-lgbtq-community-in-delaware/.

their gender identity, the Court will be forward-looking, cognizant that once the bell has been rung, it cannot be unrung. And while the topic of transgender rights is of national concern, national fervor cannot overcome Petitioner's interest in concealing a matter that is quintessentially a private one—obtaining a name change that affirms their transgender identity; such would be defeated by allowing the record to remain open to the public.[34] The only public interest in name change applications is protecting against those seeking to avoid or obstruct criminal prosecution, avoid creditors, or perpetrate criminal or civil fraud.[35] Here, there is no evidence that Petitioner is seeking to avoid or obstruct criminal prosecutions, avoid creditors, or perpetrate a fraud.

Therefore, because this an entirely private matter with no meaningful public interest, Petitioner's Motion to Seal the Record is **GRANTED**.

**IT IS SO ORDERED** this 31st day of March 2025.

The Honorable Carl C. Danberg
Chief Judge

---

[34] *But see Barbieri v. News-Journal Co.*, 189 A.2d 773, 774 (Del. 1963) (The Court held that the "republication after 9 years of the circumstance of plaintiff's conviction and punishment, and of his name, at a time when the subject of the use of corporal punished for crime was of ... public interest.").
[35] *In re Matter of Herald*, 2014 WL 12684986, at *1 (Del. Com. Pl. Dec. 10, 2014).

7