William Richard PERKINS

v.

George A. WAGNER, Warden, Robert Santora, Deputy Warden.

Civ. A. No. 81–0484.

United States District Court, E. D. Pennsylvania.

May 4, 1981.

William Richard Perkins, pro se.

David A. Binder, Reading, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

While in state custody and awaiting trial, plaintiff claimed that defendants, the warden of the Berks County Prison and his deputy, subjected him to cruel and unusual punishment by denying him visitation rights with his wife, also his co-defendant in the state proceedings. Defendants' conduct, contends plaintiff, violated state law by depriving him of the opportunity to have con-

fidential communications with his co-defendant and to establish a unified, coordinated defense. Plaintiff also complained that, during the three months in which defendant denied him visitation rights, his marital relationship "suffered" and caused him mental anguish, suffering, nervousness, deep depression and "constant frustration", which he considered cruel and unusual punishment and sought "relief from custody" and damages exceeding ten thousand dollars. While incarcerated, plaintiff moved for a preliminary injunction to enjoin defendants from denying him visitations with his co-defendant for the purpose of establishing a defense.

Plaintiff's *pro se* complaint must be read liberally and held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), *United States ex rel. Walker v. Fayette City,* 599 F.2d 573, 575 (3d Cir. 1979). Imprecision and inartful drafting in plaintiff's allegations required the Court to determine initially whether plaintiff sought relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983, or a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241, 2254, between which *Preiser v. Rodriguez,* 411 U.S. 475, 494, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439 (1973), distinguished by stating:

> If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, . . . a damages action by a state prisoner could be brought in federal court without any requirement of prior exhaustion of state remedies.

*Cf. Ross v. Meagan,* 638 F.2d 646 (3d Cir. 1981) (alleging a conspiracy to violate their Fourth and Fourteenth Amendment rights, plaintiffs stated a claim under Section 1983 since they sought monetary damages and did not challenge the *fact* or *duration* of their confinement); *Wright v. Cuyler,* 624 F.2d 455, 458 n. 5 (3d Cir. 1980) (since the

"heart" of a habeas corpus petition seeks release from confinement, petitioner's challenge to the *manner* by which prison officials reached their decision, rather than the *result* to exclude him from a home furlough program stated a claim under Section 1983). *Accord, Bisaccia v. Attorney General of the State of New Jersey,* 623 F.2d 307 (3d Cir. 1980).

■ Here, plaintiff, a former pre-trial detainee, complained that his inability to visit his incarcerated co-defendant deprived him of his right to prepare a defense against pending criminal charges. He did not request release from prison, the essence of a habeas corpus petition, but rather injunctive relief directing the warden to allow visitation and a monetary award to redress the mental anguish which he claims to have suffered. Moreover, the caption which the plaintiff selected for his complaint—"Form to be used by prisoners for filing a complaint under 42 U.S.C. § 1983" —further buttresses this conclusion. Accordingly, plaintiff's complaint will be construed as a civil rights action rather than as a habeas corpus petition and, therefore, plaintiff did not need to exhaust state remedies. *Preiser v. Rodriguez,* 411 U.S. at 477, 93 S.Ct. at 1829.

In *Cobb v. Aytch,* 643 F.2d 946 (3d Cir. 1981), the Court of Appeals held that the Sixth and Fourteenth Amendments prohibit a state from transferring a pre-trial detainee without his consent or affording him notice of the proposed transfer and an opportunity to be heard in opposition thereto. The court reasoned that pre-trial detainees retain several constitutionally protected liberty interests, including the right to counsel and a speedy trial. Non-consensual transfers, or those without notice, effectively violate these Sixth Amendment rights by "removing defendants from [the] proximity of potential witnesses . . . and curtail[ing] the[ir] ability . . . to communicate with potential witnesses". *Id.* at 960. Accordingly, the court held that the unrestricted transfer of pre-trial detainees violates not only defendants' Fourteenth Amendment liberty interests but also their constitutional

guarantees of effective assistance of counsel and a speedy trial by impermissibly impeding and delaying counsel's efforts to prepare an adequate defense.

The *Cobb* court distinguished *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), with the observation that Bell addressed only the narrow issue of the amount and type of reasonable restrictions to which prison officials may subject a pre-trial detainee in order to maintain institutional security. The *Bell* court, confronted with body cavity and cell searches of pre-trial detainees, found this activity consonant with the Fourth Amendment unless "arbitrary or purposeless". 441 U.S. at 539, 99 S.Ct. at 1874. In the case at bar, the Court faces a Sixth and Fourteenth Amendment issue, whether a pre-trial detainee may be denied access to and/or confidential communications with a co-defendant for the purpose of planning a unified and coordinated defense. As *Cobb* recognized, the Sixth and Fourteenth Amendments require that pre-trial detainees retain sufficient liberty interests which include the right to prepare an adequate defense.

■ To obtain preliminary injunctive relief, plaintiff must demonstrate that irreparable injury will occur if relief is not granted until a final adjudication on the merits can be made, that there is a reasonable probability of success on the merits, and that the possibility of harm to the non-moving party as well as to any other interested party will be minimal, and that harm to the public, when relevant, will not be likely. *Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d 351, 356–67 (3d Cir. 1980). *Accord, Kennecott v. Smith Corp.*, 637 F.2d 181 (3d Cir. 1980), *Fitzgerald v. Mountain Laurel Racing Corp.*, 607 F.2d 589 (3d Cir. 1979). To prove "irreparable injury", plaintiff must show an "imminent threat" rather than the "possibility of a remote future injury". *Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d at 359 (citations omitted). In the case at bar, plaintiff alleged that defendants' actions impeded his ability to "confer about [his] trial, to set up a defense, etc." As such, plaintiff faced the

imminent threat of being forced to trial without an adequate defense. True, plaintiff could be acquitted *without* conferring with his co-defendant or appeal his conviction and thereby encounter only a *possibility* of future injury, an insufficient basis upon which to issue an injunction. However, the *Cobb* court, implicitly rejecting a similar argument, instructed the district court to issue an injunction circumscribing defendants' ability to transfer plaintiffs at will. The court recognized that denial of a pre-trial detainee's Sixth and Fourteenth Amendment rights warranted injunctive relief, notwithstanding the fact that defendants could seemingly remedy the constitutional violation through direct and collateral attacks upon their conviction. Clearly, state criminal defendants, deprived of federally insured constitutional rights, may properly seek injunctive relief in federal court to vindicate these rights. Accordingly, plaintiff has shown an imminent threat sufficient to satisfy the first requirement precedent to the grant of injunctive relief.

Whether plaintiff has demonstrated a reasonable probability of success on the merits does not require him to show that a final decision after trial is "wholly without doubt"; rather plaintiff must garner a "prima facie case of showing a reasonable probability". *Punnett v. Carter*, 521 F.2d 142, 148 (3d Cir. 1970). *See also Texas Department of Community Affairs v. Burdine,* —— U.S. ——, —— n.7, 101 S.Ct. 1089, 1093 n.7, 67 L.Ed.2d 207 (1981). Plaintiff has satisfied this burden by stating a claim under 42 U.S.C. § 1983 and introducing sufficient evidence in the form of an affidavit that his Sixth and Fourteenth Amendment rights may have been violated.

Defendants have not demonstrated any realistic possibility of harm to the non-moving and other interested parties, the third factor. Although some administrative inconvenience may be imposed upon prison officials by allowing co-defendants to confer in order to establish a unified, coordinated defense, a denial of constitutional rights cannot be justified on this basis. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct.

1459, 52 L.Ed.2d 31 (1977), *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Finally, no harm will result to the public, nor has any been alleged from the issuance of an injunction. In fact, assuring plaintiff of a truly fair trial enhances the public interest, and the judicial system benefits by avoiding retrials following constitutionally flawed convictions. *Cf. United States v. Haley*, 504 F.Supp. 1124 (E.D.Pa. 1981) (transferring a prosecution to a forum more likely to assure defendants of a truly fair trial). Accordingly, *at the time plaintiff filed his complaint*, he satisfied the requirements for the issuance of a preliminary injunction.

■ Plaintiff's release from prison subsequent to filing of the complaint and prior to the hearing thereon will not render the matter injusticiably moot. The limits of federal judicial power mandated by the Article III requirement of a "case of controversy" admit of some exceptions. Classically, cases which are "capable of repetition, yet evading review" fall within this category. *See Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 514–15, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). A deprivation of pretrial detainees' federally guaranteed rights is so "inherently transitory", *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), that a formalistic approach to Article III would effectively deny pre-trial detainees redress for constitutional infractions, for "pretrial detention is, by its very nature, temporary". *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975). Pennsylvania enacted a speedy trial rule, *see* Pa.R.Crim.P. 1100, which requires prosecutors to try defendants within one hundred eighty days of filing the criminal complaint. Given the facts that pre-trial custody may terminate at any time by release on recognizance, dismissal of the charges, entry of a guilty plea, conviction or acquittal and that criminal defendants are pre-trial detainees for a *de minimis* and unascertainable period of time, the likelihood that they could adjudicate constitutional claims prior to release or sentencing seems extremely minimal, and·

repeated deprivations of constitutionally insured rights could occur with impunity.

Moreover, where an individual plaintiff has a personal stake at the outset of the lawsuit and the claim may arise again as to *him*, the exception also applies, *United States Parole Commission v. Geraghty*, supra, for plaintiff, as a released criminal defendant, faces "some likelihood" of becoming involved in the same controversy again. His bail could be revoked prior to trial or increased pending sentencing. In either event, he would retain the Sixth and Fourteenth Amendment rights delineated in *Cobb*, which requires that plaintiff have access to counsel, witnesses and others who may aid him in his defense.

Lastly, upon calling this case for hearing, plaintiff informed the Court that he no longer desired to pursue his claim for monetary damages. Accordingly, his claim for damages is dismissed and we will enter an appropriate order.

### ORDER

AND NOW, this 4th day of May, 1981, upon consideration of plaintiff's motion for a preliminary injunction, a review of the entire file and the testimony and argument in open court, IT IS ORDERED that defendants and those acting in concért with them are ENJOINED from denying plaintiff visits with his co-defendant, Debra Lynn Perkins. Defendants shall arrange for plaintiff to visit with his co-defendant for the purpose of establishing a coordinated and adequate defense at such times and places as the Warden shall deem conducive to institutional security and for as long as necessary for the adequate preparation of plaintiff's defense.

IT IS FURTHER ORDERED that plaintiff's request for monetary damages is DISMISSED.