**Joseph WRIGHT**

v.

**COLUMBIA UNIVERSITY.**

**Civ. A. No. 81–2996.**

United States District Court,
E. D. Pennsylvania.

Aug. 7, 1981.

bia University, hereinafter referred to as Columbia, to provide him with the opportunity to participate in its intercollegiate football program as a deprivation of rights secured by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C., Section 701 et seq., hereinafter referred to as the Rehabilitation Act.

Moving for a temporary restraining order preventing Columbia from discriminating against him on the basis of his handicap, plaintiff argues that, notwithstanding his lack of vision in one eye, he was an outstanding high school running back; that, given the opportunity, he is capable of playing on Columbia's team; that, aside from his handicap, he is "otherwise qualified" to participate in the program; and that his coaches concur with this assessment. Finally, plaintiff and his parents are apparently willing to release Columbia from any potential liability which it might incur by virtue of his participation in the football program.

Specifically, plaintiff contends that Columbia, a recipient of federal funds, violated Section 504 of the Rehabilitation Act, which provides that

> No otherwise qualified handicapped individual . . . as defined in Section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance.

The parties do not dispute the fact that plaintiff is handicapped within the meaning of Section 706(7) and the regulations promulgated thereunder.

Columbia argues, however, that its intercollegiate sports, physical education and athletic programs receive neither federal grants nor any federal financial assistance directly and that, consequently, the football program falls outside the coverage of the Rehabilitation Act, which proscribes discrimination by "any program or activity" receiving federal funds. That is, although the University as an institution receives federal funds, the discrete entity of the

James J. Riley, Pottsville, Pa., for plaintiff.

John B. Langel, Philadelphia, Pa., for defendant.

TROUTMAN, District Judge.

THE COURT: Because of the plaintiff's demand for immediate relief in the nature of a temporary restraining order, and because of the apparent need for it by reason of the commencement of the Columbia athletic football program next week, we have elected to decline the opportunity to develop and write a well-sculptured opinion, and rather to present the issues as we see them from the bench and dispose of the case this afternoon to the extent that relief is demanded without the niceties of a well-written opinion.

The plaintiff in this case, John Wright, sighted since infancy in his left eye only, challenges the refusal of defendant Colum-

football team itself does not. Therefore, Columbia argues that plaintiff's claim must fail.

Recognizing that Section 504 contains no legislative history, Columbia urges not only an examination of the legislative history and case law of analogous federal statutes, namely, Title IX of the Education Amendments of 1972, 20 U.S.C., Section 1681 et seq. and Title VI of the Civil Rights Act of 1964, 42 U.S.C., Section 2000d et seq., but also a construction thereof in a manner parallel to Section 504. In summary, Columbia asseverates that those statutory antidiscrimination provisions apply only to the specific entity or program receiving federal funds rather than the institution of which that entity is a part and that, as such, plaintiff's claim must fail. See *Othen v. Ann Arbor School Board*, 507 F.Supp. 1376 (E.D.Mich.1981).

True, some relationship exists among and between Title VI, Title IX and Section 504. However, Columbia's contention that such a kinship compels the conclusion that analysis under Title VI and Title IX must be adopted whole cloth and applied to Section 504 forces the kinship to an unwarranted degree of consanguinity.

Additionally, defendant's proffered statutory construction ignores the regulations promulgated under the Rehabilitation Act, which defines the "recipient" of federal funds, for Section 504 purposes, as

> ... any public or private agency, institution, organization, or other entity, or any person to which federal financial assistance is extended directly or through another recipient.

45 C.F.R. 84.3(f). This regulation specifically contradicts defendant's asserted narrow construction. Importantly, a recent court decision has done so as well. *Poole v. South Plainfield Board of Education*, 490 F.Supp. 948 at 950 and 51 (D.N.J.1980). True, as contended by Columbia, the Poole Court was not aware of the cases called to our attention today by the defendant. That does not prove that the Poole Court, given such cases, would have adopted the analogy urged by the defendant. Importantly, also see 45 C.F.R. 84.17(a)(1).

To the extent that the University receives federal funding, component entities thereof benefit indirectly through the reallocation of funds received from other sources. Moreover, to accept defendant's argument would allow major institutions receiving substantial amounts of federal aid to dissect themselves, at whim, into discrete entities, to allocate federal dollars into programs which cannot discriminate against handicapped persons, and to free privately obtained funds from those programs and instead to channel such money into programs purportedly immune from Section 504 strictures. Columbia's construction of Section 504 would sanction this circumvention of federal policy against discrimination for institutions benefiting from federal aid.

Finally, Columbia has consistently viewed itself as a singular institution rather than as a composite of discrete entities. Columbia's surgeon, Dr. Schetlin, wrote to the director of athletics that plaintiff should not be allowed to play intercollegiate football and that he, the doctor, had reached this conclusion after consultation with plaintiff and discussions which extended over a four-month period with the Columbia's legal counsel as well as senior officers in both the athletic program and the University itself. When plaintiff challenged Dr. Schetlin's conclusion, Columbia's general counsel informed him that the University supported the doctor's decision and that this judgment was final. Clearly, Columbia has consistently represented to plaintiff that the University as a whole, not the limited entity of the athletic program, was the official decisionmaker. Therefore, even accepting Columbia's argument that Section 504 does not apply to the football team as a discrete entity which does not receive federal funds, the Section obviously applies to the University which made this ultimate decision. Consequently, if plaintiff was the victim of discrimination based upon his handicap, the University, not the athletic program, is the party responsible therefor.

■ To prevail on its motion for a temporary restraining order and a preliminary

injunction, plaintiff must demonstrate that irreparable injury will occur if the relief is not granted until a final adjudication on the merits can be made, that there is a reasonable probability of success on the merits, and that the possibility of harm to the non-moving party will be minimal and that harm to the public, when relevant, will not be likely. See *Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d 351 (3d Cir. 1980), *Perkins v. Wagner*, 513 F.Supp. 904 (E.D. Pa.1981). See also *Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir.), vacated and remanded (1981).

▮ Plaintiff has shown that irreparable harm will occur if the requested relief is not granted. Due to Columbia's freshman ineligibility rule, plaintiff may participate in the varsity football program for only a three-year period. Columbia's schedule includes a maximum of ten games per year commencing in early September and continuing through November. Team tryouts and practice will begin in mid-August and are a prerequisite to participation in the program for the remainder of the season. Hence, should plaintiff not be permitted to participate in the upcoming workout and tryouts, he will be deprived of the one opportunity which he has to participate fully in an intercollegiate football program. That deprivation may ultimately preclude a career in professional football.

Whether plaintiff has demonstrated a reasonable probability of success on the merits does not require him to show that a final decision after trial is wholly without doubt; rather, plaintiff must garner a "prima facie case of showing a reasonable probability." See *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1970). In the case at bar, plaintiff, who is handicapped within the meaning of the Act, must show at this stage of the proceedings that he is "otherwise qualified" to participate in a "program of activity receiving federal financial assistance" and that he is barred from participation therein "solely" by reason of his handicap. See 29 U.S.C., Section 794.

Apparently, the parties here do not dispute that a private cause of action exists in plaintiff's favor, *Doe v. Colautti*, 592 F.2d 704 at 708, note 8 (3d Cir. 1979), and that, absent his handicap, he is "otherwise qualified" to participate in the intercollegiate football program. Defendant has not asserted that it would be forced to "lower or . . . effect substantial modifications of standards" in order to accommodate plaintiff. See *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 2371, 60 L.Ed.2d 980 (1979). Moreover, courts have enjoined high schools from preventing students with various handicaps from participating in sports programs. See *Poole v. South Plainfield Board of Education*, supra (where a student with one kidney was involved in a wrestling program), *Borden v. Rohr*, No. 75–844 (S.D.Ohio 1975) (involving a student with vision in one eye and interested in the basketball program). Also, see *Suemnick v. Michigan High School Athletic Association*, No. 4–70592 (E.D. Mich.1974) (involving a student with one leg interested in the high school varsity football program).

Courts, interpreting Section 504 have also extended its protection to deaf graduate students, *Camensich v. University of Texas*, supra, and to deaf teachers requesting interpreters in order to continue their own education. *Barnes v. Converse College*, 436 F.Supp. 635 (D.S.C.1977).

In the case at bar, plaintiff has offered proof through a highly qualified ophthalmologist that no substantial risk of serious eye injury related to football exists. Moreover, plaintiff has testified that he seriously considered and appreciates the risks incident to playing football with impaired vision and willingly accepts them. As such, this case differs from *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977), where the court expressly pointed out that the plaintiffs had "presented little evidence, medical, statistical or otherwise" and accordingly denied the request of plaintiff's partially sighted students, for injunctive relief against public school authorities who denied their request to play contact sports. The court there also deferred to the defendant's exercise of discretion where the public

school system acted pursuant to its "in loco parentis" powers to protect the well-being of the students who were not old enough to weigh the risks involved and to make a mature, informed decision.

In contrast, in the case at bar, plaintiff is obviously mature enough to make this important decision, and witnesses have so testified. Upon completion of one year at Columbia, plaintiff has attained a B grade point average and, as noted previously, has received many high school scholastic and athletic awards. In short, plaintiff is indeed an intelligent, motivated young man who is capable of making this decision which affects his health and well-being. Accordingly, defendant's reliance upon the Kampmeier case is, we believe, misplaced.

Neither Columbia University nor the public in general will be harmed by issuance of an injunction; in this case, a temporary restraining order. Columbia has never asserted that it would be harmed by plaintiff's intercollegiate football career; rather, it has premised its decision to exclude him on the understandable belief that plaintiff should avoid contact sports which might render him sightless and that he should properly concentrate on obtaining an education while at Columbia. Such motives, while laudably evidencing Columbia's concern for its students' well-being, derogate from the rights secured to plaintiff under Section 504, which prohibits "paternalistic authorities" from deciding that certain activities are "too risky" for a handicapped person. Again, See *Poole v. Southern Plainfield Township Board of Education*, 490 F.Supp. at 954. Here, as in *Poole*, the defendant is acting "in a manner contrary to the express wishes of his parents who, together with their son, have reached a rational decision concerning the risk involved."

The parallel of the *Poole* case and the instant case is, we think, quite obvious. Moreover, the public interest is enhanced by plaintiff's "dramatic example" that "hard work and dedication to purpose can overcome enormous odds." See *Suemnick v. Michigan High School Athletic Association*, No. 4–70592, slip op. at 4.

■ Finally, defendant raises additional arguments to the granting of the requested relief. It argues improper venue, improper service and that plaintiff unreasonably and impermissibly delayed for one year the filing of this suit.

Service of the complaint was made pursuant to Federal Rules of Civil Procedure, 4(d)(3) and (e), which allow for out-of-state service in the manner prescribed by law. Pennsylvania requires that service by mail outside of the Commonwealth be registered. See Pennsylvania Rule of Civil Procedure 2079. Plaintiff served Columbia by regular mail. Columbia does not dispute that it received plaintiff's complaint and motion papers and claims no prejudice as a result and none appears on the record.

To dismiss this action for want of proper service would require plaintiff simply to refile his complaint and motion papers and to serve Columbia by certified mail. In *Easton Area Joint Sewer Authority v. Bushkill-Lower Lehigh Joint Sewer Authority*, 517 F.Supp. 583 (E.D.Pa.1981). A hearing would then have to be scheduled to establish the facts adduced here today and Columbia, already concerned about undue delay, would be ill served by such a technical victory. Accordingly, on this record, we decline to dismiss the action because of the defect in service.

■ Columbia further complains that plaintiff knew of its decision to bar him from the football program for almost a year prior to instituting suit and that an injunction should not issue since plaintiff's urgent request for equitable relief is undercut by his own delay. Although we do not condone the plaintiff's delay in filing this complaint, we do not believe that delay, even though allegedly accompanied by an unsatisfactory explanation, requires dismissal. See *Barnes v. Converse College*, 436 F.Supp. at 633, footnote 1.

The evidence suggests that the delay was the result of lack of funds by which to retain counsel and pay witness fees, et cetera. This roadblock was apparently re-

moved when a Columbia graduate, interested in Columbia's athletic recruitment program, referred plaintiff to a lawyer apparently willing to proceed without a retainer or payment of fees in advance. He, in turn, apparently arranged for the appearance of witnesses without payment of fees in advance. Hence, the delay has been adequately explained. Also responsible for the delay was plaintiff's understandable desire to first determine whether he was satisfied with Columbia's academic program and whether he could satisfactorily handle it before proceeding with the litigation.

█ Finally, since plaintiff invokes jurisdiction pursuant to the Rehabilitation Act and claims that defendant, an out-of-state corporation, has deprived him of rights secured by that statute, venue is controlled by 28 U.S.C. 1391(b) and (c). Defendant, arguing that venue is improper in the Eastern District of Pennsylvania, urges dismissal without prejudice or transfer to an appropriate court in New York.

Clearly, venue is not proper under Section 1391(b), which permits suits not founded upon diversity to be brought only in the judicial district where all defendants reside, where the claim arose or as otherwise provided by law. Here, the wrongful discrimination occurred in New York and venue in the Eastern District of Pennsylvania is improper. However, venue is proper and properly found under Section 1391(c), which provides that a corporation may be sued in any judicial district in which it is "doing business." This requirement demands a greater quantum of contacts than suffices to establish jurisdiction. See *J. M. L. Trading Corp. v. Marine Salvage Corp.*, 501 F.Supp. 323, 324 (E.D.Pa.1980), *Trinity Metals v. Andy International*, 424 F.Supp. 966, 968 (E.D.Pa.1977).

Here, defendant's contacts with Pennsylvania consist of a regular, systematic recruitment program which included use of university alumni, personal visits by Columbia coaches to the homes and schools of prospective students and "get togethers" arranged by alumni, and involved coaches and prospective students-athletes with their parents at local Holiday Inns. Defendant's active recruitment of plaintiff in this case involved visits by Columbia's assistant football coaches to plaintiff's high school in February of 1980, which was followed by a Columbia-arranged and -financed flight from Allentown, Pennsylvania to New York to afford plaintiff the opportunity to see Columbia's campus.

Subsequently, plaintiff and his parents had a "get together" with the football team's coaching staff and "about eight" other prospective Columbia students at a Holiday Inn. These contacts in Pennsylvania are further supplemented by a series of telephone calls and one or two other visits to Pennsylvania. Columbia's recruitment efforts finally came to fruition when plaintiff executed a grant-in-aid package sent to him in Pennsylvania from New York. Since these transactions by Columbia in Pennsylvania are not "isolated," then venue is, we believe, proper. See *J. M. L. Trading Corp. v. Marine Salvage Corp.*, 501 F.Supp. at 322.

Accordingly, we will grant the plaintiff's motion for a temporary restraining order, and the following order will be entered: AND NOW, this 7th day of August, 1981, upon consideration of plaintiff's motion for a temporary restraining order and defendant's response thereto, it is ordered that the motion is GRANTED. It is further ordered that the defendant, Columbia University, is temporarily enjoined from denying plaintiff the opportunity of participating in the intercollegiate football program because of his visual handicap.

That concludes the opinion.