Richard POOLE, Plaintiff,

v.

SOUTH PLAINFIELD BOARD OF
EDUCATION, Defendant.

Civ. No. 79–1771.

United States District Court,
D. New Jersey,
Civil Division.

May 28, 1980.

George F. Hendricks by Stephen C. Orosz,
New Brunswick, N. J., for plaintiff.

Wilentz, Goldman & Spitzer P. A. by Gordon J. Golum, Woodbridge, N. J., for defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

Richard Poole, a young man who was born with one kidney, was denied the right to participate in South Plainfield High School's interscholastic wrestling program due to his handicap. As a result, he has brought this suit against the South Plainfield Board of Education seeking compensatory damages. His complaint alleges a cause of action under 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment rights and under 29 U.S.C. § 794, also known as § 504 of the Rehabilitation Act of 1973, "which prohibits discrimination against an 'otherwise qualified handicapped individual' in federally funded programs 'solely be reason of his handicap.'" *Southeastern Community College v. Davis*, 442 U.S. 397, 400, 99 S.Ct. 2361, 2364, 60 L.Ed.2d 980 (1979) *quoting* 29 U.S.C. § 794.

The Board has filed a motion for dismissal for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or, in the alternative, for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or for summary judgment pursuant to Fed.R.Civ.P. 56.

Although the defendant's moving papers principally address the constitutional issues raised by Mr. Poole's complaint, it is clear from the plaintiff's responding papers and from paragraph 1 of the pretrial order, that this is principally a case arising under the Rehabilitation Act of 1973. I have concluded that the defendant is not entitled to either summary judgment or a dismissal of Richard Poole's § 504 claim and will, therefore, deny its motion.

The Board has urged several grounds for rejection of the plaintiff's § 504 claim. As an initial matter, they assert that § 504 does not create a private cause of action. Although the question of whether this section creates a private cause of action is a matter in dispute nationally. *See Southeastern Community College v. Davis*, 442 U.S. 397, 404 fn. 5, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979), it has been resolved in favor of a private party's standing in the Third Circuit. *Doe v. Colautti*, 592 F.2d 704, 708 fn. 8 (1979). The Board has also argued that even if § 504 creates a private cause of action, it only creates an action for injunctive relief and not one for damages. It is true that in *Doe v. Colautti* the plaintiff was only seeking injunctive relief, but in *Leary v. Crapsey*, 566 F.2d 863 (2d Cir. 1977), the first case cited by the Third Circuit in support of the proposition that a private cause of action exists, the plaintiff was seeking monetary as well as injunctive relief. The decision in *Leary* is a sound one.

There are many plaintiffs for whom injunctive relief can only come too late. Mr. Poole is one of these, since he has already graduated from the South Plainfield High School and cannot, therefore, participate in its wrestling program. If he can prove that he was a victim of illegal discrimination, he should be entitled to some form of relief. Monetary damages are the most usual form of relief given to successful plaintiffs, and I conclude that they are appropriately sought here.

I am aware of the fact that a contrary conclusion was reached in *Boxall v. Sequia Union High School District*, 464 F.Supp. 1104 (N.D.Cal.1979), but I respectfully disagree with Judge Peckham's conclusion in that case. If, as the Third Circuit has held, Congress intended to permit private litigants to enforce § 504, then it seems sensible to conclude that in the absence of an express limitation on remedies, the usual remedies should be available in order to promote that enforcement. I see no reason, therefore, to draw a distinction between injunctive and monetary relief.

The Board's second objection is that its interscholastic wrestling program does not come within the purview of § 504 since it "was not the recipient of federal funds for its interscholastic athletic program during the period of plaintiff's enrollment in the school system." Defendant's brief at page 7.

It is, of course, clear from the statutory language that § 504 is only applicable to a "program or activity receiving Federal financial assistance." What is not clear is the definition of "program or activity."

The Board admits in the affidavit of William Foley that it receives federal assistance for a number of its projects and activities. It argues, however, that unless the federal aid is received for the specific program that a handicapped individual is denied access to, in this case interscholastic athletics, that § 504 does not apply. The Board has cited no authority other than the statutory language itself in support of this proposition.

The Board's restrictive definition does not seem to be in keeping with the broad remedial purpose of the Rehabilitation Act of 1973. See 29 U.S.C. § 701 (Congressional declaration of purpose). Moreover, it is a definition that the Department of Health, Education and Welfare has rejected in its regulations interpreting § 504.

According to 45 CFR § 84.2 the regulations are applicable to each "recipient" of Federal Assistance from HEW. A "recipient" is defined as:

[A]ny state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance.

45 CFR § 84.3(f).

The South Plainfield Board of Education certainly meets this definition of a "recipient." What, then, are the duties of "recipients" like the defendants here, who operate schools? As the plaintiff's brief has pointed out, the regulations at 45 CFR § 84.37 state:

"Nonacademic services:

(a) *General.*

(1) A recipient to which this subpart applies shall provide nonacademic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities.

(2) Nonacademic and extracurricular services and activities may include counseling services, physical recreational athletics, transportation, health services, recreational activities, special interest groups or clubs sponsored by the recipients, referrals to agencies which provide assistance to handicapped persons, and employment of students, including both employment by the recipient and assistance in making available outside employment.

\*    \*    \*    \*    \*    \*

(c) *Physical education and athletics.*

(1) In providing physical education courses and athletics and similar programs and activities to any of its students, a recipient to which this subpart applies may not discriminate on the basis of handicap. A recipient that offers physical education courses or that operates or sponsors interscholastic, club, or intramural athletics shall provide to qualified handicapped students an equal opportunity for participation in these activities.

(2) A recipient may offer to handicapped students physical education and athletic activities that are separate or different from those offered to nonhandicapped students only if separation or differentiation is consistent with the requirements of § 84.34 and only if no qualified handicapped student is denied the opportunity to compete for teams or to participate in courses that are not separate or different."

Section 84.34, which is referred to in the regulation that I have just read, states in relevant part:

In providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, and the services and activities set forth in § 84.37(a)(2), a recipient shall ensure that handicapped persons

participate with nonhandicapped persons in such activities and services to the maximum extent appropriate to the needs of the handicapped person in question."

45 CFR § 84.34(b). It is clear from 45 CFR § 84.31 that these regulations are applicable to a recipient, even though the funds received are not for the specific program involved in the handicapped person's claims. According to § 84.31,

[these regulations apply] to preschool, elementary, secondary, and adult education facilities that receive or benefit from Federal financial assistance and to recipients that operate . . . such programs or activities.

I am convinced that in promulgating these regulations, the Secretary of HEW manifested his belief that § 504 of the Rehabilitation Act of 1973 was applicable to entities like the South Plainfield Board of Education in all of its interscholastic athletic activities if it received federal moneys for any of its programs, athletic or otherwise.

■ While the HEW interpretation of § 504 is persuasive, it is not, of course, binding on this Court. As the Supreme Court recently stated:

Although an agency's interpretation of the statute under which it operates is entitled to some deference, "this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose and history".

*Southeastern Community College v. Davis,* 442 U.S. at 411, 99 S.Ct. at 2369, *quoting Teamsters v. Daniel,* 439 U.S. 551, 566 fn. 20, 99 S.Ct. 790, 800 fn. 20, 58 L.Ed.2d 808 (1979).

■ I agree with the agency's interpretation, however, insofar as it finds § 504 applicable to all of the activities engaged in by a school system receiving federal funds. It seems absurd to ban discrimination in a discrete area of a school system that receives federal funds while permitting it throughout the rest of the system. I do not believe that Congress intended to ban discrimination during school hours while permitting it in officially sponsored extracurricular activities. This belief is supported by the fact that federal aid to any program in a school system releases local money for other uses, thereby benefitting those programs that are not direct beneficiaries of the federal aid. It should also be noted that the Supreme Court's recent decision in *Southeastern Community College v. Davis* applied § 504 to a nursing program in a school receiving federal funds without inquiry into whether the nursing program itself received federal moneys. 442 U.S. at 400, 99 S.Ct. at 2364. Moreover, the defendant has not cited any legislative history or other authority in support of its stricter interpretation. I hold, therefore, that § 504 is applicable to the interscholastic athletic activities of a school system receiving federal funding even if none of the federal funds are specifically spent on interscholastic athletics.

■ Having dispensed with the defendant's objections to the plaintiff's standing and its assertion that § 504 is inapplicable to its athletic program, it is necessary to deal with the defense's substantive claim that the allegations made by Richard Poole do not make out a violation of § 504. In deciding this question,

. . . the court must take the view of the evidence most favorable to the party against whom the motion is directed, giving to that party the benefit of all favorable inferences that might reasonably be drawn . . .

*Janek v. Celebrezze,* 336 F.2d 828, 834 (3d Cir. 1964).

Taking such a view of the case, the following facts emerge. Richard Poole, at the time in question, was a vigorous, athletically inclined high school student in good health. His only physical problem was the absence of one kidney from birth. His single kidney was, however, a healthy one. Mr. Poole, the son of a former state champion wrestler, participated in the school wrestling program in his eighth, ninth and tenth grades. He was denied the right to participate during his eleventh and twelfth grade years, however, when the Medical Director

of the South Plainfield Board of Education, Dr. John F. Scalera, advised the Board that it should not allow Mr. Poole to participate in its wrestling program because of his physical condition. Both Richard and his parents wanted Richard to participate in the high school wrestling program, even after they were made aware of the school system's concern over possible injury to his kidney. Despite protests and an offer to sign a waiver by Richard and his parents, the Board decided to heed Dr. Scalera's advice. The Pooles' subsequent appeal to the New Jersey Commissioner of Education proved unsuccessful and by the time Richard graduated from South Plainfield High School in June 1978, he had been denied participation in the wrestling program for two school years.

Although some doctors, and especially the school system's medical director, Dr. Scalera, believe that it is inadvisable for a student with one kidney to participate in wrestling, there is also medical opinion, represented by the opinions of Drs. Fred Lathrop and Joseph S. Torg, that Richard could safely participate in the sport of wrestling. Giving the plaintiff the benefit of all doubts, it could be concluded that the better view was that participation in wrestling was safe for Richard.

The Board, however, decided to prohibit Richard's participation, after seeking a legal opinion from their counsel as well as the medical opinion of Dr. Lathrop. It seems that their decision was based on a serious concern over the possibility of injury to Richard's kidney and their moral and legal responsibility in the event of such an eventuality. This view is reflected in the opinions of both their physician and their lawyer. Dr. Scalera wrote to the Board that:

> It is in the best interest of the students to bar them from contact sports despite the wrath from both students and parents. How can you justify and explain to the student who has one kidney and the other destroyed that his death or lifelong attachment to a kidney machine was worth the "glory".

Affidavit of Leonard A. Tobias, filed March 31, 1980, Exhibit B. In a similar vein, the Board's attorney, Robert J. Cirafesi, included the following conclusion in his opinion letter to the Board:

> Although, at first blush, a complete release and waiver would appear to resolve the problem at hand, such an approach side-steps the basic question of responsibility. In other words, in my opinion, the Board of Education cannot abrogate its responsibility towards the pupils in question by placing the entire burden of responsibility upon the pupils and parents. In this type of situation, the school board stands *in loco parentis*, which means literally "in place of the parents". As such, it is for the Board of Education to exercise its collective judgment in this matter and a waiver or release from the parents based upon their own judgments that their sons should be allowed to participate cannot, in my opinion, abrogate the Board's ultimate responsibility.

Brief of defendant, Exhibit A.

From these letters, together with the medical evidence discussed above, it could be inferred that the Board of Education decided that it was part of its function to protect its students against rational judgments reached by themselves and their parents. In effect, the Board's decision stands the doctrine of *in loco parentis* on its head. Traditionally, this doctrine has meant that a school system must act "in place of the parents" when the parents are absent. *See Brinkerhoff v. Merselis' Executors*, 24 N.J.L. 680, 683 (Sup.Ct.1855); *A.S. v. B.S.*, 139 N.J.Super. 366, 369, 354 A.2d 100 (Ch. 1976). Here, the South Plainfield Board has acted in a manner contrary to the express wishes of parents, who, together with their son, have reached a rational decision concerning the risk involved in wrestling.

As the Supreme Court recently recognized in *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), a state may sometimes disregard wishes of parents "when [a child's] physical . . . health is jeopardized." *Id.* at 603, 99 S.Ct. at 2504, but the same decision also makes it clear

that such instances are rare and usually premised upon child neglect or abuse rather than upon a mere difference of rational opinion. *Id.* at 602–603, 99 S.Ct. at 2504–2505.

In the words of the *Parham* court:

Our jurisprudence historically has reflected western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course; our constitutional system long ago rejected any notion that a child is "the mere creature of the State"

* * * * * *

. . . Simply because the decision of a parent . . . involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state.

*Id.* at 602–603, 99 S.Ct. at 2504.

It can be concluded, therefore, that the South Plainfield Board's perception of its role in the face of disagreeing parents armed with respectable medical authority was an unusual one. To find it unusual, however, is not to say that it is prohibited. Many unusual things may be done so long as they violate neither statutory, common, nor constitutional law. The question of whether the Board's actions violated § 504 of the Rehabilitation Act of 1973 is, of course, the nub of this lawsuit.

I will now address that question on the basis of the facts that I have just outlined, with all inferences drawn in favor of the plaintiff.

The Supreme Court recently rendered its only decision to date interpreting § 504. In *Southeastern Community College v. Davis,* cited *supra,* the Supreme Court decided that a woman with a serious hearing impairment, requiring her to read lips, could be rejected from a training program for Registered Nurses on the basis of her handicap without violating § 504. In that case the Court's primary focus was on the question of whether the plaintiff was "qualified" for the nursing program. The court found that:

It is not open to dispute that, as Southeastern's Associate Degree Nursing program currently is constituted, the ability to understand speech without reliance on lipreading is necessary for patient safety during the clinical phase of the program . . . this ability also is indispensable for many of the functions that a registered nurse performs.

*Id.,* 442 U.S. at 407, 99 S.Ct. at 2367. Since the Court held that § 504 did not require the college to change its program to accommodate handicapped students, *Id.* at 411–12, 99 S.Ct. at 2369–2370, the college's hearing requirement was sustained. The Court's holding, as it affects this case, can be summarized by quoting its definition of the language of § 504: "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406, 99 S.Ct. at 2367.

The question to be decided in this case, then, is whether Richard Poole Jr., was able to meet all of South Plainfield's interscholastic wrestling program's requirements in spite of the fact that he was born with one kidney. The Board's position is that Richard is unqualified because he failed to pass the physical that he was required to take in order to participate. It is clear, however, that the only reason he failed the exam was the absence of a paired organ, i. e., one kidney, and the doctor's legitimate fear of injury to the other. The Board has nowhere suggested that Richard was incapable of pinning his adversary to the mat or meeting the training requirements of a team sport. The board seems to have premised its decision on fear of injury to Richard's only kidney. It is undoubtedly true that injury to Richard's kidney would have grave consequences, but so might other injuries that might befall him or any other member of the wrestling team. Hardly a year goes by that there is not at least one instance of the tragic death of a healthy youth as a result of competitive sports activity. Life has risks. The purpose of § 504, however, is to permit handicapped individuals to live life as fully as

they are able, without paternalistic authorities deciding that certain activities are too risky for them.

Much of the school's brief is devoted to the proposition that Richard, as a minor, could not execute a legally binding waiver or consent form relieving the Board of responsibility. I believe that this argument misconceives the Board's role. This is not a contract. This is a young man who, with his parents' support and approval, wishes to live an active life despite a congenital defect. The Board's responsibility is to see that he does not pursue this course in a foolish manner. They therefore have a duty to alert Richard and his parents to the dangers involved and to require them to deal with the matter rationally.

■ In the present case, the Pooles not only consulted their family physician, Dr. Lathrop, but Dr. Torg of the Temple University Center for Sports Medicine and Science as well. Both of these doctors felt that Richard could participate. The Pooles also consulted with Gerald C. Leeman, a wrestling coach at Lehigh University, as to the types and frequencies of injuries encountered by wrestlers. The Board knew of these consultations but insisted nonetheless in imposing its own rational decision over the rational decision of the Pooles. I hold that it had neither the duty nor the right under § 504 to do so. This conclusion is shared by HEW, as reflected in a policy interpretation of § 504 published at 43 Fed. Reg. 36034, 35 (August 14, 1978).

Whatever duty the Board may have had towards Richard was satisfied once it became clear that the Pooles knew of the dangers involved and rationally reached a decision to encourage their son's participation in interscholastic wrestling. I believe that if the plaintiff can prove the facts as I have inferred them to exist in this opinion, then he will be entitled to a judgment that the Board violated § 504.

I have not addressed any of the constitutional issues raised because I have been able to resolve the questions presented on a statutory basis.

As a final note, I would like to mention that I am aware that the New Jersey Commissioner of Education has issued several opinions that would seem to reach a conclusion contrary to the one that I have reached today. *See R. P. v. Board of Education of Borough of South Plainfield* (February 27, 1978) (involving the plaintiff in the present case); *C. P. v. Board of Education of Borough of South Plainfield* (October 17, 1978); *P. N. v. Board of Education of City of Elizabeth*, 1975 (N.J.) SLD 783. I would simply like to note that none of these opinions consider the applicability of § 504 of the Rehabilitation Act of 1973. They may, therefore, contain a correct interpretation of New Jersey Law, but the mandate of § 504 must prevail where that statute is applicable by virtue of the supremacy clause of the Constitution, Art. VI, cl. 2; *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824).

The defendant's motion must, therefore, be denied.