Phyllis WOLFF, as Parent and Natural Guardian of Jean Wolff, A Minor, Plaintiffs,

v.

SOUTH COLONIE CENTRAL SCHOOL DISTRICT, Defendant.

No. 82–CV–235.

United States District Court, N. D. New York.

March 25, 1982.

---

Colonie Central School District from preventing Jean's participation in an upcoming school-sponsored trip to Spain. Jurisdiction is pursuant to 28 U.S.C. § 1331. Plaintiff's application for a preliminary injunction was consolidated, by stipulation of the parties, with the trial of the action on the merits pursuant to Fed.R.Civ.P. 65(a)(2).[1] The following are the findings of fact and conclusions of law mandated by Fed.R.Civ.P. 52.

## II.

### FINDINGS OF FACT

1. Plaintiff, Jean Wolff, a 15½ year old student attending the 10th grade at South Colonie High School, has a congenital limb deficiency. Her legs are approximately 1 foot in length; her right arm has been amputated above the elbow and fitted with a prosthetic device. At the end of her left arm, which is shorter than normal, are two partially functional digits. Jean is approximately 3½ feet in height.

2. Defendant South Colonie Central School District (hereinafter "School District"), a municipal corporation organized pursuant to the laws of the State of New York, operates the high school Jean attends and is an entity receiving federal financial assistance.

Nolan & Heller, Albany, N. Y., for plaintiff; Robert G. Wakeman, Albany, N. Y., of counsel.

Tabner, Carlson, Farrell & Cholakis, Albany, N. Y., for defendant; C. Theodore Carlson, Albany, N. Y., of counsel.

MINER, District Judge.

### I.

Plaintiffs, Phyllis Wolff and her handicapped infant daughter Jean, bring this action under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, to enjoin the South

3. In September, 1979, plaintiff Phyllis Wolff contacted School District officials concerning Jean's attendance in the South Colonie school system and requested that a van or automobile be supplied to transport Jean to and from school. She also requested that an "aide" be supplied to help Jean in school to perform her daily school activities.

4. At a meeting of the South Colonie Board of Education on September 18, 1979, a resolution was passed approving the creation of a 6½ hour school monitor position

---

1. Various exhibits were received in evidence, and testimony was given by the following: Phyllis Wolff and Jean Marie Wolff, plaintiffs; Thomas Schillaci, a student at the Colonie Central High School; William Follett, who lives in the house occupied by plaintiffs; Dorothy Ann Kulzer, Jean's aide; Anthony Mistretta, Supervisor of Foreign Languages in the South Colonie School District; Karen Sue Levine, Jean's Spanish teacher; Joseph Prenoveau, Assistant Superintendent for Instruction in the School District; and John Gallas, Supervisor of Guidance and Psychological Services and Chairman of the School District's Committee on the Handicapped. The trial was held on March 22, 1982.

(hereinafter "aide") at the Sand Creek Jr. High School to provide for Jean's individual safety and welfare. In addition, arrangements were made for a special van to transport Jean to and from school. The School District has continued to supply the special van and aide during Jean's attendance at the High School and plaintiff Phyllis Wolff has not applied to discontinue these services.

5. The special van, which has no riders other than Jean, transports Jean daily from the door of her house to the school entrance. The van is specially equipped with lower than usual access steps.

6. The aide, Mrs. Dorothy Kulzer, meets Jean at the entrance of the school. During the school day she takes Jean's books out of a locker and carries them from class to class. She also protects Jean from inadvertent harm from her fellow classmates by walking behind Jean and to her left, thereby blocking any onrushing students. In addition, the aide guards against slipping or falling when Jean ascends or descends stairways.

7. However, there are occasions when students have bumped into Jean in the hallways during the passing of classes as well as occasions when she has stumbled and fallen. Jean is allowed to use a "short cut" to class through normally restricted hallways. She usually is late for the class to which she has the longest walk with a stairway en route.

8. In order to climb stairs, Jean must place one foot on the next level step and then, using the bannister for leverage, haul the rest of her body up to that level. This procedure is repeated until she reaches the top. Jean descends stairs in the same manner, hopping from stair to stair if no bannister is available.

9. Jean is capable of walking at a speed of approximately one half that of a normal adult for at least three miles, and is capable of "running" for between 5 and 10 minutes. On a short field trip through the Pine Bush, Jean was unable to keep up with the class.

10. This Court has had the opportunity to observe Jean during the course of these proceedings and notes the difficulties she encountered with such tasks as seating herself on the witness chair. Otherwise, Jean appears to be above average in intelligence, friendly and highly motivated for a child of her years.

11. In October, 1981, an announcement was made in Jean's Spanish class concerning a forthcoming trip to Spain. Wishing to participate, Jean fulfilled all the preliminary requirements, including demonstration of a serious interest in languages, completion of Level I Spanish studies, stipulating to certain school and trip policies, obtaining a medical release, attendance at certain planning meetings, paying a deposit of $100, and obtaining her mother's consent and signature. At some point, the balance of the cost of the trip was paid in full.

12. A meeting attended by Jean, her mother, and various school officials and teachers was held thereafter to discuss the itinerary, city by city, in light of problems which might develop for Jean. In January 1982, plaintiffs were informed that Jean would not be allowed to participate in the program without being accompanied by an aide. When plaintiffs made no attempt to obtain such an aide, all payments were returned to plaintiffs and Jean was dropped from the program.

13. The itinerary of the trip includes various Spanish cities, and the tour is to last for approximately twenty days. Much of the trip will include extensive walking tours of the cities, including the crossing of congested highways, ascending and descending stairs, and exploring various sites and monuments of historic significance. Many of the tours would be conducted by a "guide" at a brisk pace. During most of their stay in Madrid, the students will be residing with Spanish families who will accompany the children on additional excursions. Madrid, during the tour, will be particularly crowded due to the Easter holidays.

14. On the day of arrival in Madrid, the Colonie School group is scheduled to take a five mile walking tour of the City. Later

that day, there will be a two mile walking tour to dinner. On another day, the students will travel to the outskirts of Madrid, where they will tour El Escorial, involving the descent of a steep and narrow stairway to the tombs of the Spanish Kings, and the Valley of the Fallen, involving the ascent of numerous flights of stairs to the monument dedicated to those who died in the Spanish Civil War.

15. The trip will also include a walking tour of Toledo, lasting almost an entire day. Toledo's streets are uneven and cobblestoned. In addition, the group will spend two days in Seville, including an extensive walking tour of much of the city. It is anticipated that Seville will be particularly crowded due to the upcoming annual spring fair. Generally, past school tours have included a day at the bullfights. The bullfight is particularly crowded and frenzied, and is apparently on the upcoming tour's agenda for Seville. Attending the bullfight will entail the climbing of numerous stone stairways.

16. In Granada, the group will visit the Alhambra Palace. The tour bus will stop at some distance from the Palace, which contains numerous steps. The group will also take extensive walking tours of other Spanish cities.

17. Given her present physical limitations, Jean would be unable to maintain the brisk and physically demanding pace of the group's walking tours and would be unable to ascend and descend the myriad stairways, many of which, as part of historically preserved sites, do not contain bannisters or guardrails necessary for her locomotion and safety.

18. In addition, the throngs of people encountered in many cities, the heavy urban traffic and the crowds gathered at events such as the bullfight, constitute significant hazards to the well-being and safety of the infant plaintiff.

### III.

### CONCLUSIONS OF LAW

1. This action arises under section 504 of the Rehabilitation Act of 1973, 29 U.S.C.

§ 794, which provides that no otherwise qualified handicapped individual, as defined in section 706(6) of title 29, shall, solely by reason of his handicap, be excluded from participation in any program or activity receiving Federal financial assistance.

2. Section 706(6) defines a handicapped individual as any person who has a physical impairment which substantially limits one or more of such person's major life activities.

3. Under section 504 of the Rehabilitation Act, therefore, a tripartite inquiry must be made:

(a) whether plaintiff is a handicapped individual as defined by § 706(6);

(b) whether the activity or program receives Federal financial assistance; and

(c) whether plaintiff is an otherwise qualified handicapped individual excluded from participation in the activity or program solely by reason of his handicap.

4. Plaintiff Jean Wolff is a handicapped individual within the meaning of this Act.

5. The trip to Spain can be considered an activity or program receiving Federal financial assistance within the meaning of the Act since, although the students pay for a substantial portion of the expenses of the trip, regular salaried teachers will be attending as chaperones while school is in session, the School District has sponsored and planned the program, and students will be under the supervision of teacher and School District personnel during this trip. *See Poole v. South Plainfield Board of Education,* 490 F.Supp. 948 (D.N.J. 1980). *See also* 45 C.F.R. 84.37(a)(2).

6. For a determination of whether plaintiff Jean Wolff is "otherwise qualified" within the meaning of the Act, the Court may consider whether the program requires applicants to possess certain physical qualifications necessary for participation, *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), and the Court may also consider a state's parens patriae interest in

protecting the disabled against physical harm when the state has shown a risk to safety in a particular activity. *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977).

    7. Since Jean is unable to fulfill the physical requirements of the trip, and since a substantial degree of physical risk to her safety has been demonstrated were she to participate in the program, plaintiff Jean Wolff is not otherwise qualified within the meaning of § 504 of the Act.

8. Accordingly, the relief sought by plaintiffs is denied in all respects and the complaint is dismissed.[2]

---

2. Although plaintiffs plead claims predicated upon 42 U.S.C. § 1983 and the Education for All Handicapped Children Act, 20 U.S.C. § 1401 et seq., they maintained in oral argument that their claim for relief is asserted solely under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Oral Arguments for Preliminary Injunction, Wolff v. South Colonie Central School District, 82–CV–235, March 19, 1982). Accordingly, the Court does not reach the merits of the § 1983 and E.A.H.C.A. claims. However, this Court is of the opinion that plaintiffs would not, in any event, prevail under either of those two Acts.