Victor JOURNEY, Appellant,

v.

Joseph VITEK, et al., Appellees.

No. 81–1918.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1982.

Decided Aug. 13, 1982.

---

6.  District court opinion at 9.

7.  District court opinion at 9.

8.  Consent decree at 6–7.

Roberta S. Stick, Lincoln, Neb., for appellant.

Paul L. Douglas, Atty. Gen., J. Kirk Brown, Asst. Atty. Gen., Lincoln, Neb., for appellees.

Before STEPHENSON,* Senior Circuit Judge, and McMILLIAN and JOHN R. GIBSON,** Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Victor Journey is confined to a wheelchair because of spastic paraplegia, and is in the custody of the Nebraska Department of

---

* Assumed senior status on April 1, 1982.

** United States District Judge for the Western District of Missouri at the time this case was submitted, sitting by designation.

Correctional Services. He brought this action against certain officials of the Nebraska Department of Correctional Services under 42 U.S.C. § 1983, claiming he was deprived of rights and privileges secured by federal and state law because of his handicap. A bench trial resulted in judgment for defendants on all counts.[1] He contends on this appeal that he was subject of discrimination because he is handicapped, under 29 U.S.C. § 794, has been deprived of property rights and liberty interests under both federal and state law, and deprived of rights and liberties without due process of law because of administrative sanctions in assigning him to the infirmary. We affirm the judgment of the district court.

Journey is serving a 21 to 36–year sentence. He was convicted of robbery, shooting with intent to kill and using a firearm in a felony as a result of an occurrence on July 25, 1977, when he was a paraplegic and in a wheelchair. He will not be eligible for parole until 1991. His earlier record included sentences for breaking and entering, attempted burglary, escape from prison, failure to pay child support and violation of the habitual criminal act.

Journey's paraplegia results from a motorcycle accident in 1972. He has no control of his bladder. Journey is susceptible to pneumonia. He has had troubles with his left shoulder since the motorcycle accident. He has had kidney and bladder infections from the time of his spinal injury as well as edema of the feet and lower legs. He has had ingrown toenails because of his inability to clip them.[2]

When he arrived at the Department of Correctional Services, Penal and Correctional Complex, on January 27, 1978, he was assigned to its infirmary by the action of the initial classification committee. On March 8, 1978 he was discharged to the East Cell House. On April 18, 1978 he was sent to Lincoln General Hospital for treatment of pneumonia. He returned to the East Cell House on April 26, 1978 and again was transferred to the Penal and Correctional Complex Infirmary on May 1, 1978. He remained there until transferred to the newly completed Diagnostic and Evaluation Center Infirmary on April 16, 1979, which was felt would most satisfactorily accommodate his handicap. He remained there until the time of trial.[3]

The penitentiary complex infirmary was located on the second floor and Journey's access to some prison activities was limited because there were no ramps and he could not negotiate stairs without assistance of other persons. His transfer to the East Cell House resulted from the belief that inmate friends would be willing to transport him up and down the Cell House stairs to inmate recreational activities but this hope proved to be fruitless as the inmate friends were not as dependable as had been hoped in providing this transportation. Journey also contracted pneumonia in the Cell House, which required additional treatment. The Diagnostic and Evaluation Infirmary allowed more freedom of movement, but was not barrier free.

I.

Appellant Journey claims that he has been deprived of participation in educational, rehabilitative, recreational and employment programs in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which provides:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court, District of Nebraska.

2. The trial in the district court also involved the medical services furnished Journey, but these issues are not raised on this appeal.

3. When this case was argued, Journey had been moved to a new penitentiary with all facilities specially designed for handicapped persons. As monetary damages were sought, this does not render this case moot.

It was conceded that Journey is a handicapped individual as defined in this section and that he has a private judicial remedy for its violation. The district court, after a three-day trial, found as follows:

> Viewing the evidence as a whole, I conclude that there has been no exclusion of the plaintiff from participation in or denial of benefits or subjection to discrimination under any program or activity of the Department of Correctional Services as related to Victor Journey ... I find that Victor Journey has not been excluded from participation in any program or activity, has not been denied the benefits of any program or activity, and has not been subjected to discrimination under any program or activity of the Nebraska Department of Correctional Services.
>
> *     *     *     *     *     *
>
> For the most part ... the prison personnel have afforded [Journey] access to the activities in which he had interest, nearly as often as he wanted to participate.

■ These factual findings, under Federal Rule of Civil Procedure 52(a) "shall not be set aside unless clearly erroneous." *See also: Martin v. United States*, 586 F.2d 1206 (8th Cir. 1978); *Pullman-Standard v. Swint*, —— U.S. ——, ———–———, 102 S.Ct. 1781, 1788–1791, 72 L.Ed. 66, 78–82 (1982). The presumption in favor of the trial court's findings can only be overturned when the reviewing court on the entire evidence is left with a definite and firm conviction that

a mistake has been made. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, —— U.S. ——, ———–——, 102 S.Ct. 2182, 2188–2190, 72 L.Ed.2d 606, 616–18 (1982); *Ridgway v. United Hospitals-Miller Division*, 563 F.2d 923, 927 (8th Cir. 1977). Journey argues that the findings of the district court are clearly erroneous but does not point to evidence in the record that would permit this conclusion.

Having carefully reviewed the record in this case, we conclude that the findings of the district court were not clearly erroneous and we cannot conclude that a mistake has been committed.

This factual finding makes unnecessary consideration of several other issues raised by appellant. The district court did not decide whether the phrase "any program or activity receiving Federal financial assistance" in the Rehabilitation Act of 1973 means the specific programs which were the subject of Journey's exclusion, discrimination or denial of benefits or *any* program or activity of the Department of Correctional Services.[4] This issue we also need not decide, as the district court's finding assumes without deciding that if any Federal financial assistance went to the Nebraska Department of Correctional Services, whether or not to a program from which Journey has been excluded, denied benefits or been the subject of discrimination, that he has an action.[5]

---

**4.** Victor Journey was housed in the Diagnostic and Evaluation Infirmary, and the record demonstrated that the infirmary had received $352,-166.00 from the Law Enforcement Assistance Administration.

**5.** 29 U.S.C. § 794 specifically refers to exclusion, denial or discrimination "under any program or activity receiving Federal financial assistance." The legislative history of this section does not make clear whether "any program or activity" is the specific program involving the handicapped individual, or financial assistance to the institution generally. At least two district courts have analyzed this provision and found that financial assistance to the institution in general is what is required, rather than financial assistance to the specific program in question. *Poole v. South Plainfield Bd. of Education*, 490 F.Supp. 948 (D.N.J.1980), in-

volved a high school student with one kidney who was denied the opportunity to participate in an interscholastic wrestling program because of his handicap. *Poole* concluded that section 793 was applicable to the interscholastic athletic program even if none of the funds were spent on interscholastic athletics. 490 F.Supp. at 951. *Wright v. Columbia University*, 520 F.Supp. 789 (E.D.Pa.1981), reached a similar conclusion with respect to a student blind in one eye that was excluded from a football program at the university. *Sites v. McKenzie*, 423 F.Supp. 1190 (N.D.W.Va.1976), and *Hart v. County of Alameda*, 485 F.Supp. 66 (N.D.Cal.1979), reach similar conclusions. *Poole* contains a searching analysis of the question. The court bases its decision not only on the regulations of the Department of Health, Education and Welfare, but also on the Supreme Court's decision in *Southeastern Com-*

## II.

■ Appellant Journey argues that his removal from the general prison population and confinement in a one-man cell in the Diagnostic and Evaluation Center Infirmary is administrative segregation, which was imposed without any of the procedures required by the due process clause of the Fourteenth Amendment of the United States Constitution. This, however, is not the issue tried in the district court, which was defined in the pretrial order (paragraph 10) as whether disciplinary sanctions had been imposed. We will not consider this issue since, absent unusual circumstances, issues not tried in the district court will not afford the basis for reversal by a court of appeals. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976); *United States v. State of South Dakota*, 665 F.2d 837 (8th Cir. 1981).

With respect to the due process clause, the district court found:

Furthermore, the changes in the conditions of confinement from infirmary of the penitentiary to the East Cell House to the infirmary of the penitentiary to the infirmary of the Diagnostic and Evaluation Center do not constitute a "grievous loss" to the plaintiff. The conditions are not so different as to trigger the due process clause.

The issue also requires a decision as to whether the change of locations and conditions under which the plaintiff has been confined imposed "disciplinary sanctions" upon him. I find that they do not. There is no hint in the evidence that any of the changes or conditions were imposed for punishment purposes, but have been made only in an effort to provide the most appropriate setting for dealing with the plaintiff and the unusual problems which he presents to the institution.

Appellant has not demonstrated that this finding is clearly erroneous or that a mistake has been committed, and on our review of the record we cannot make such conclusion.

■ Our review of the record demonstrates that Journey's assignment to both of these infirmaries was for medical reasons, and was not security or administrative segregation or detention. Journey argues that conditions in the D&E Infirmary were less favorable than the conditions in the Cell House. This circumstance did not entitle Journey to due process measures before the transfer. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the United States Supreme Court held:

The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. . . .

Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

*Id.* at 224–25, 96 S.Ct. at 2538–2539, 49 L.Ed.2d at 459.

Journey's transfer from the general prison population to the two infirmaries was "within the normal limits or range of custody which the conviction has authorized the State to impose," and there was no require-

---

*munity College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), which dealt with a hearing-impaired student who was denied admission to a nursing program. In *Southeastern Community College* the Supreme Court looked only to whether the state institution as a whole received a federal funding.

This court in *Carmi v. Metropolitan St. Louis Sewer District*, 620 F.2d 672 (8th Cir. 1980), *cert. denied* 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980), seemingly takes a more restricted position. The majority opinion by Chief Judge Lay examines the legislative history of Title VI and finds that the protection does not extend to "any person other than an intended beneficiary of federal financial assistance." See footnote 4, 620 F.2d at 674–75. Judge McMillian expressed differing views in his concurring opinion. *See also: Simon v. St. Louis County, Mo.*, 656 F.2d 316, 319 (8th Cir. 1981), *cert. denied* —— U.S. ——, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982).

ment of a due process hearing before appellant was transferred.[6] *See also: Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).

We therefore reject Journey's due process claim.

### III.

Appellant Journey argues that he has been denied property rights afforded by Nebraska Revised Statutes. Sections 83–182 and 83–183 (Re-Issue 1976), provide:

> The Director of Correctional Services shall establish appropriate programs for each facility designed as far as practical to prepare and assist each person committed to the department to assume his responsibilities as a useful citizen. In developing such programs, the director shall seek to make available to each person capable of benefiting therefrom academic or vocational training, participation in productive work, religious and recreational activities and such therapeutic measures as are practicable. Neb.Rev.Stat. § 83–182.
>
> (1) To establish good habits of work and responsibility, to foster vocational training, and to reduce the cost of operating the facilities, persons committed to the Department of Correctional Services shall be employed so far as possible in constructive and diversified activities in the production of goods, services and foodstuffs to maintain the facilities, for state use and for other purposes authorized by law.... Neb.Rev.Stat. § 83–183.

■ The district court assumed 42 U.S.C. § 1983 enabled the inmate of the prison to sue for failure of a state to provide services required by state statutes and made the following finding:

**6.** In *Meachum v. Fano, supra*, the Supreme Court held that if the particular state where the prisoner is incarcerated itself has regulations requiring hearings prior to the transfer of prisoners, the prisoner can invoke the federal due process clause to vindicate these state-created due process rights. On appeal Journey argues that the rules established by the Nebraska Department of Correctional Services required that

I find that there has been no violation of the statute or the rules and regulations in this instance. The programs have been designed, "as far as practical," to assist the plaintiff to assume his responsibilities as a useful citizen, and the Director has sought to make available to the plaintiff training, work, religious and recreational activities, and such therapeutic measures as are practicable.

Again, Journey does not demonstrate that the finding of the district court was clearly erroneous or that a mistake has been committed, and our review of the entire record convinces us that this finding should not be set aside.

Journey claims that he was entitled to the services described in the state statutes and that he was not afforded an opportunity to be heard in a meaningful manner to resist the taking of this property interest. In view of the court's findings that the director had sought to make available programs "as far as practical," there is not a taking of a property interest as claimed by Journey. Accordingly, a hearing is not required.

Journey has no claim for deprivation of property rights for the claimed failure to provide the services described in the state statutes.

### IV.

■ Journey claims that he was denied access to various rights and privileges enjoyed by others in the general prison population in violation of the equal protection clause of the Fourteenth Amendment. Again, Journey is faced with a factual finding of the district court contrary to his position. The district court found:

certain due process procedures be followed before either disciplinary or administrative segregation could be imposed on inmates. We do not reach this issue, however, since the district court clearly found that disciplinary sanctions had not been imposed, and the evidence at trial was that there was no administrative segregation.

There has been no lack of substantially equal treatment and access within the meaning of the equal protection clause.

Once again, Journey does not demonstrate that the factual finding of the district court is clearly erroneous and his claim in this respect is without merit.

### V.

Without doubt, Victor Journey presented substantial and unique problems for the Nebraska Department of Correctional Services. The district court found:

> There is no other prisoner in the care of the Department of Correctional Services who presents the kinds of problems that Victor Journey presents in terms of disability, medical needs, and custody requirements. His sentence is long; he will not be eligible for parole, evidently, before December 21, 1991. He has once been convicted of escape and has been convicted of robbery, shooting with intent to kill, and use of a firearm in the commission of a felony, which offenses occurred after his paraplegia confined him to a wheelchair. Given that broad set of problems, I think that the Department of Correctional Services has acted reasonably in its various efforts to afford the plaintiff the most appropriate setting, facilities and assistance that are reasonably capable of being acquired.

Journey disputes this finding, particularly that he was the only prisoner with serious physical handicaps at the institution. There was testimony before the district court that Journey was a special category offender, an unusual case with respect to inmates at the penitentiary, and that his physical and medical condition created special needs for treatment and attention from the medical staff. On this record we cannot conclude that the district court's findings of fact in the carefully prepared order are clearly erroneous. The district court found that the Nebraska Department of Correctional Services had made a reasonable effort to accommodate the problems created by Journey's handicap and found that participation in many of the programs and activities was rejected by Journey.

This case has been capably presented with great conviction by Journey's counsel. After carefully studying the entire record, we must conclude, however, that the findings of the district court are not clearly erroneous and that they are adequately supported by the record. This Court cannot conclude that a mistake has been committed by the district court. Accordingly, the judgment of the district court is affirmed.